IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FIRST GUARANTY MORTGAGE CORP.,       :
                  Plaintiff,

                            :      CIVIL ACTION NO.: MJD-02-326

    v.                    :

RONALD PROCOPIO, et. al.,       :
                  Defendants
                            :

---

## DEFENDANT LOVEYJOY'S MOTION TO FILE ANSWER TO FIRST AMENDED COMPLAINT AND FOR A MODIFICATION OF THE SCHEDULING ORDER

Defendant Lester H. Lovejoy ("Lovejoy"), by counsel, moves for a modification of the scheduling order entered by the Court on approximately November 2, 2002. Additionally, Lovejoy moves for leave to file an answer to Plaintiff's First Amended Complaint. In support of his motion, Lovejoy submits the following memorandum of law.

### FACTUAL BACKGROUND

On May 17, 2001, Plaintiff, First Guaranty Mortgage Corp., filed this case against Lovejoy and eight other defendants. Pursuant to an order of this Court, entered on approximately November 4, 2002, Plaintiff subsequently amended its complaint. The Court's order provided that the defendants need not file an answer to Plaintiff's amended complaint. The complaint, as amended, purports to set forth five (5) separate claims against Lovejoy, including breach of contract, civil conspiracy, fraud, and two (2) counts under the Racketeering Influences Corrupt Organizations Act (18 U.S.C. §§ 1961 et. seq.) ("RICO").

The Court also entered a Scheduling Order that provides for the close of discovery on August 1, 2003. (Order, p. 2.) The Order provides that it was entered pursuant to Local Rule 103.9 and that it "will not be changed except for good cause." (Order, p. 1.) The Order apparently does not contain the mandatory statement required by Local Rule 103(9)(b).[1] See Local Rule 103(9)(b). Although Lovejoy did not request a modification of the Order, he is not an attorney, and he represented himself during the entire discovery period. Moreover, the only evidence that was produced during the formal discovery period was evidence provided to Plaintiff by Lovejoy.

Lovejoy, nevertheless, has diligently attempted to defend himself against Plaintiff's claims. As specifically directed by the summons, Lovejoy timely served what he, as a layperson, thought was an adequate answer to Plaintiff's original complaint by mailing his answer directly to Plaintiff.[2] A copy of Lovejoy's original answer is attached as **Exhibit A.** Lovejoy's answer, however, does not appear to be fully responsive to each allegation made in the original complaint. (Accordingly, we seek leave to file a more formal answer, as reflected by the attached **Exhibit B.**) Additionally, Lovejoy fully responded to all discovery requests sought in this case and he informally conducted discovery on his own behalf before Plaintiff filed its complaint.[3] In

---

[1] Local Rule 103(9)(b) directs that a scheduling order "shall provide that any party who believes that any deadline ... is unreasonable may request in writing a modification of the order or that a conference be held for the purpose of seeking a modification of the order."

[2] The Court's docket reflects that Lovejoy has not filed an answer with the Court. We are not certain whether the Court has received a copy of Lovejoy's answer, but we note that pro se pleadings are generally liberally construed. See e.g., Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 595-96 (1972) (requiring liberal construction of pro se litigant pleadings).

[3] The fact that Lovejoy had considerable difficulty in responding to Plaintiff's discovery requests without the assistance of counsel is well documented on the record. After Plaintiff filed a motion to compel discovery, on June 30, 2002, the Court graciously mailed Lovejoy a copy of Federal Rule of Civil Procedure 37 and advised him of the necessity of filing objections to certain discovery responses.

fact. Lovejoy met with Plaintiff in a sincere attempt to ascertain the facts and to assist Plaintiff with its investigation into the facts of this case. After subsequently realizing that he needed the assistance of counsel, Lovejoy retained the undersigned counsel, who has also commenced an investigation into the facts of the case.

Among other things, we have reviewed discovery provided through the courtesy of other counsel. Additionally, the undersigned counsel has made arrangements to review the parties' depositions. Thus far, we have determined that from Lovejoy's perspective, there are a number of issues – such as the extent to which Plaintiff has provided evidence sufficient to establish a RICO enterprise's continuity – which must be explored before this case comes to trial. We therefore request an extension of discovery for ninety days.[4] This will allow Plaintiff the thirty days necessary to answer the proposed discovery (attached hereto as **Exhibits C and C-1**) and allow us an additional sixty days to follow that up with such depositions as are necessary to defend Lovejoy's interests. Lovejoy's discovery requests are straightforward and custom tailored to determine the fundamental facts alleged in Plaintiff's complaint. As far as Lovejoy's counsel has ascertained, no other party has inquired about the matters sought in Lovejoy's interrogatories. (Many of the questions relate exclusively to Lovejoy's involvement in the alleged conspiracy.)

Amending the Scheduling Order will cause no prejudice to the parties. In fact, four of the of the parties, the Procopios, Rock Creek Associates, Inc., and Chasteen, have already indicated that they either consent to or do not oppose Lovejoy's request to extend discovery. Moreover, the discovery period has only recently expired and no pretrial hearing has been held to schedule this action for trial.

Furthermore, on November 6, 2002, the Court mailed Lovejoy a letter advising him that his discovery

3

LEGAL ARGUMENT AND CITATION OF AUTHORITY

I.      THE COURT SHOULD MODIFY ITS SCHEDULING ORDER TO
        PERMIT LOVEJOY TO CONDUCT DISCOVERY.

   A.   This Court must liberally exercise its discretion when determining whether
        good cause exists to modify its scheduling order.

Under Rule 16(b) of the Federal Rules of Procedure, district courts have broad discretion

to modify an initial scheduling order for good cause shown. See Vulcan Tools v. Makita USA,

Inc., 23 F.3d 564 (1ˢᵗ Cir. 1994). Moreover, the standard for finding good cause is very liberal, as

has been observed:

> "[T]he Advisory Committee was wary of incorporating too stringent a
> standard that would be necessary in order to justify an extension of dates in a
> scheduling order into Rule 16(b). This is made evident based on the
> following passage from the Notes of the Advisory Committee: 'The court
> may modify the schedule on a showing of good cause if it cannot reasonably
> be met despite the diligence of the party seeking the extension.' Since the
> scheduling order is entered early in the litigation, this standard seems more
> appropriate than a "manifest injustice" or "substantial hardship" test.
> Otherwise, a fear that extensions will not be granted may encourage counsel
> to request the longest possible periods for completing pleading, joinder, and
> discovery." In re Air Crash Disaster at Detroit Metro. Airport, 130 F.R.D.
> 632, 633 (E.D. Mich. 1989).

Thus, as the above case illustrates, the standard for finding good cause is "rather low."

Id; see also, Mosswood Oil & Gas Co. v. Lauderman, 38 Fed.R.Serv.2d 876, 876 ((N.D.W.Va.

1983)("counsel's honest mistake concerning the time allowed for filing an answer constitutes

good cause ....")(emphasis added). Accordingly, Lovejoy submits that this Court must liberally

assess whether good cause exists to modify its scheduling order.

---

responses were insufficient and needed to be supplemented.
[4] Plaintiff has respectfully declined our informal request to engage in informal discovery.

**B.    Good cause exists to modify the scheduling order because Lovejoy could not reasonably meet the Court's discovery schedule.**

Lovejoy submits that he could not reasonably meet the Court's discovery schedule, despite his diligent attempts to defend himself in this action.  District courts have long recognized that what is considered to be reasonable depends on the specific circumstances involved.  See e.g., Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972) (pro se complaints held to less stringent standards than formal pleadings drafted by lawyers); Lewis v. Faulkner, 689 F.2d 100, 102 (7th Cir. 1982) (pro se party was not afforded reasonable notice of necessity of responding to summary judgment motion.); Moore v. Agency for Intern. Develop., 994 F.2d 874, 876 (D.C. Cir. 1993)("Pro se litigants are allowed more latitude than litigants represented by counsel ...."); Rathborne, Hair & Ridgeway Co. v. Williams, 59 F. Supp. 1, 4 (E.D.S.C. 1945)("The efforts which the ... party must make ... need only be reasonable under the circumstances of the particular case,..."). Specifically, with respect to pro se parties, courts have recognized that "[l]itigants without counsel lack formal legal training and 'occupy a position significantly different from that occupied by litigants represented by counsel.'" Timms v. Frank, 953 F.2d 281, 283 (7th Cir. 1992). Therefore, for example, the fact that Lovejoy did not depose Plaintiff during the discovery period does not reflect that he was not diligent.  Rather, it merely reflects that Lovejoy is a typical layperson, lacking both the knowledge and skills necessary to undertake discovery by deposition.  Moreover, "[i]t would not be realistic to impute [to laypersons] ... an instinctual awareness" of either the purposes served by formal discovery or the mechanical aspects of conducting formal discovery.  See Lewis v. Faulkner, 689 F.2d 100, 101

(7th Cir. 1982)(similarly recognizing that pro se parties are not expected to know the intricacies associated with responding to a summary judgment motion).

In the instant matter, Lovejoy, a layperson, proceeded in the only manner in which he knew. He conducted informal discovery by meeting with the parties to discuss the case. Lovejoy also filed a rudimentary answer to Plaintiff's complaint and, with the Court's assistance, he managed to file responses to Plaintiff's discovery requests. Thus, although Lovejoy was actively engaged while this case was pending, he did not accomplish as much as the parties that were represented by skilled and learned counsel. Given that Lovejoy was not represented by counsel, his failure to complete discovery within the limited time provided in the Order was completely reasonable. (In fact, according to Plaintiff's Status Report, even the parties represented by counsel did not complete depositions until a week after the discovery period expired.)

Furthermore, because pro se parties are often unfamiliar with the technical aspects of litigation, courts have specifically recognized that they should be given leniency with respect to technical, procedural matters. See e.g., Macleod v. Georgetown Univ. Medical Cntr., 736 A.2d 977, 980 (D.C. 1999)(concluding that pro se litigants warrant "special care by trial courts" regarding technical, rather than substantive, rules of procedure.); Beaudett v. City of Hampton, 775 F.2d 1274, 1277-78 (4th Cir.1985) ("Pro se lawsuits present district judges ... with a special dilemma ... they represent the work of an untutored hand requiring special judicial solicitude."). For example, in Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208 (3rd Cir. 1984), the pro se plaintiff had failed to conduct any discovery during the entire discovery period. See Howze at 1213. Nevertheless, the Court found that the scheduling order should be extended, considering that the plaintiff, like Lovejoy, did not have the assistance of counsel during the entire discovery

6

period. See id. Moreover, as is also the case in the instant matter, the Howze Court noted that no trial date had been set, that the moving party had requested an extension of the discovery period promptly after retaining counsel, and that the pro se party would have been prejudiced if the discovery period were not extended. See Howze at 1213. Thus, Howze strongly supports that the discovery period should be extended in the instant matter.

**C.     Even if good cause does not exist to modify the scheduling order under Rule 16(b), the standard for modifying the order under Local Rule 103(9)(b) is even lower than the good cause standard set by Rule 16(b).**

The Court's scheduling order specifically provides that it was entered pursuant to Rule 103(9). (Order, p.1.) Rule 103(9)(b) exempts certain cases from the requirements set by Federal Rules 16(b) and 26(f), to the extent that those rules require that the Court confer with the parties prior to entering a scheduling order. Unlike Federal Rule 16(b), however, which specifically requires that the Court meet with the parties before entering a scheduling order, Local Rule 103(9)(b) does not require that the Court confer with the parties. Likewise, Local Rule 103(9)(b) does not provide that good cause is required to modify a scheduling order. Instead, it directs that a scheduling order "shall provide that any party who believes that any deadline ... is unreasonable may request in writing a modification of the order or that a conference be held for the purpose of seeking a modification of the order." In contrast, Federal Rule 16(b) specifically provides that good cause is needed to modify a scheduling order.

Lovejoy therefore respectfully suggests that good cause is not required to modify scheduling orders that are entered pursuant to Local Rule 103(9)(b) – such orders are entered without any input from the parties. In support of this assertion, we note that Local Rule

7

103(9)(b), by its own terms, appears to provide flexibility for the parties to seek modification. First, rather than requiring that the parties make a formal motion, the rule provides that the parties may "request" that the matter be decided pursuant to a "conference". Secondly, and most importantly, however, is the fact that modification can be had based on a party's "belief" that a scheduled date is "unreasonable". Thus, the rule appears to specifically contemplate that a judge's scheduling order may not be viewed as reasonable by the parties and provides that any party who believes as much may request a conference in order to have the order modified. Lovejoy respectfully submits that such an informal scheduling mechanism does not warrant the same standards for modification (good cause) as is applicable to instances where the parties themselves have participated in setting the scheduling deadlines. Although the undersigned counsel's research did not reveal any specific authority on this issue, Lovejoy suggests that the Court has even greater discretion to modify its scheduling order because the order was entered pursuant to Local Rule 103(9)(b).

**D.      Lovejoy is entitled to a modification of the scheduling order under Local Rule 103(9)(b) because he believes that the date in which discovery expired was unreasonable.**

Given the circumstances of this case, we respectfully submit that the initially provided discovery date was "unreasonable" within the meaning of Local Rule 103(9)(b), particularly considering that Lovejoy was attempting to defend himself against Plaintiff's complex claims.[5] Plaintiff has named nine defendants and alleged five causes of action, including two (2) RICO counts, fraud, and a civil conspiracy count. Since the time that the Court entered its scheduling order, Plaintiff has estimated that its case in chief "will most likely require at least 15 witnesses

8

over a period of at least five days and the introduction of over 50 exhibits." (Pl.'s Opp. to Mot. to Stay, p. 3.) (emphasis added).

Lovejoy suggests that the Court would have designated this action as a complex action had it known that Plaintiff's case was going to be as complicated as Plaintiff has recently indicated. It now has become evident that this is a complicated case, and not a run-of-the-mill, simple breach of contract action. Moreover, Lovejoy did not have any way of knowing that he could have requested a discovery extension based on his belief that the discovery date was unreasonable. It is only with the recent assistance of counsel that he has become aware of this fact. Thus, given the complex nature of Plaintiff's case and the fact that Lovejoy was attempting to represent himself during the entire discovery period, we respectfully suggest that the discovery expiration date was "unreasonable" within the meaning of Local Rule 103.9.

### E. This Court should exercise its discretion in the interest of justice and vacate its scheduling order because the order does not comply with Local Rule 103(9) or Federal Rule 16(b).

Lovejoy also submits that the Court's Scheduling Order should be vacated because it does not comply with either Local Rule 103(9) or F.R.Cv.P. Rule 16(b). Federal Rule 16(b) provides, in pertinent part, that:

> "Except in categories of actions exempted by district court rule as inappropriate, the district judge ... shall, after receiving a report from the parties ... or after consulting with the [parties] ... enter a scheduling order ...." (emphasis added).

By its express terms, Local Rule 103(9)(a) plainly does not exempt any of Plaintiff's claims. See Local Rule 103(9)(a). In fact, Plaintiff alleges causes of action in which discovery

---

[5] We do not mean to suggest that the Court acted unreasonably by entering the scheduling order.

serves an indisputably critical role – namely, civil conspiracy, fraud, and RICO violations. Furthermore, as previously noted, the Court's scheduling order does not contain the specific disclosure mandated by Local Rule 103(9)(b), informing the parties of their right to modify the scheduling order. Instead the Court's Scheduling Order states that it "will not be changed except for good cause." (Order, p. 1.)   Therefore, it also appears that the Court's Order was not properly entered pursuant to Local Rule 103(9)(b). Moreover, it is also apparent that the Order was not properly entered pursuant to Federal Rule 16(b). The Court could only enter such an order pursuant to Rule 16(b) "after receiving [a] report from the parties under Rule 26(f) or after consulting with [the parties]". In the instant matter, no such meeting or report occurred, as indicated by the fact that the Court stated that its order was being entered pursuant to the local rules.

Accordingly, Lovejoy respectfully suggests that the Court's Order should be vacated and that the Court should set this matter for a scheduling conference to ascertain the extent that further discovery is requested by any of the parties.

## II.   MANIFEST JUSTICE REQUIRES THAT THE COURT PERMIT LOVEJOY TO FILE AN ANSWER TO THE COMPLAINT.

Lovejoy submits that his proposed answer to Plaintiff's amended complaint is not untimely by virtue of the deadline set in the Court's scheduling order for the filing of an amended pleading. Lovejoy is not seeking to file an amended answer. Instead, he requests leave to file a response to Plaintiff's First Amended Complaint. See Deutsch v. Health Ins. Plan of Greater

10

New York, 573 F. Supp. 1443 (S.D.N.Y.1983) ("An amended complaint represents a plaintiff's second bite at the apple, and a defendant should be accorded the same privilege".).

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has declared that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962). Thus, delay alone is an insufficient reason to deny leave to amend. Rather, the delay must be accompanied by prejudice, bad faith, or futility. See Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

In the instant matter, Lovejoy has not purposefully failed to file an answer. To the contrary, after seeking an extension of time to file an answer, Lovejoy timely served his answer on Plaintiff's counsel and this Court subsequently ruled that the parties need not file an answer to the amended complaint. Moreover, Lovejoy's proposed answer will not be prejudicial or futile. In fact, the proposed answer indicates that most of the facts alleged by Plaintiff are disputed. Because Lovejoy's original answer does not specifically respond to certain allegations contained in Plaintiff's original complaint, we submit that Lovejoy's original answer may be misinterpreted as having admitted some of Plaintiff's allegations. Such an unintended result would cause unnecessary confusion of the issues and be contrary to the interests of justice. Lovejoy therefore respectfully requests that the Court accept his proposed answer for filing.

11

## CONCLUSION

In consideration of the foregoing, Lovejoy prays that the Court will grant leave to file his

answer to the amended complaint and an extension of time to complete discovery.

Respectfully submitted by:

BARBER & ASSOCIATES, P.C.,

By: _____

Andre P. Barber,
Counsel for Lester H. Lovejoy
1825 I Street, NW
Suite 400
Washington, DC 20006
(202) 479-0325
(202) 479-0326 facsimile

12

*EXHIBIT A*

DISTRICT OF MARYLAND
SOUTHREN DIVISON

FIRST GUARANTEE MORTGAGE CORPORATION
PLAINTIFF
VS                          CASE NO. WMN 02 CV 326
RONALD PROCOPIO, ET AL
DEFENDANT

ANSWERS TO FACTS COMMON TO ALL ACCOUNTS
(THAT RFERRENCE TO AREA MORTGAGE OF MARYLAND)

#18  QUALITY CONTROL WAS CONDUCTED BY PLAINTIFF FIRST
GUARANTEE MORTGAGE CORPORATION ON THE PETERBARKS LOAN
APPLICATION SUBMITTED BY AREA MORTGAGE OF MARYLAND LLC.
A REVIEW APPRAISAL WAS ORDERED BY THE PLAINTIFF NOT AREA
MORTGAGE OF MARYLAND LLC. AREA MORTGAGE OF MARYLAND
CONTENDS THAT IF ANY FRAUD WAS COMMITTED, THAT IT SHOULD
HAVE BEEN CAUGHT BY THE PLANTIFFS QUALITY CONTROL DIVISION.
THE PLANTIFF MUST ACCEPT RESPONSIBILTY FOR ITS OWN
INCOMPETANCE.

#21  IF DEFENDANT GREEN RECEIVED $3000.00 IN ADVANCE TO ASSIST IN
THE PURCHASE AND FINANCE OF THE PROPERTY, AREA MORTGAGE WAS
UNAWARE OF THIS ARRANGEMENT.

#22  THIS STATEMANT IS COMPLETELY FALSE.
DEFENDANT LESTER LOVEJOY KNEW OF NO ARRANGEMENT TO SECURE
FINANCING BETWEEN DEFENDANT GREEN AND THE PETERBARKS.

#24  THIS STATEMENT IS FALSE.
NEITHER, LESTER LOVEJOY OR AREA MORTGAGE OF MARYLAND
SUBMITTED A SALES CONTRACT.  THIS WAS SUBMITTED BY DEFENDANT
ROBERT CHASTEEN

#25  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF
MARYLAND WERE UNAWARE OF ANY FAKE DEPOSIT.

#26  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF
MARYLAND WERE UNAWARE OF ANY FALSIFICATION OF A VERIFICATION
OF DEPOSIT.

#27  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WERE UNAWARE OF ANY FALIFICATION OF A VERIFICATION OF RENT OR THE ALLEGED $680.00 THAT THE PLAINTIFF SAID THE PETERBARKS WERE PAYING.

#28 &29  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WERE NOT AWARE OF HOW THE APPLICATION WAS TAKEN.

#30,31 & 32  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WERE NOT AWARE OF ANY FALSIFICATION OF INCOME ON THE BEHALF OF THE PETERBARKS.

#33  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WERE UNAWARE OF ANY ALLEGED FALSIFICATION OF INVESTMENTS ACCOUNTS OR DEPOSITS.

#34  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARLAND HAD NO KNOWLEDGE OF ANY FALSIFICATION OF THE PURCHASE PRICE OF THE PROPERTY, ANY SUCH KNOWLEDGE IF ANY WAS ONLY KNOW BY THE PURCHASER AND THE SELLER OF THE PROPERTY.

#35  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WERE UNAWARE OF ANY SUCH FALSIFICATIONS.

#36,37 & 38  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND HAD NO KNOWLEDGE OF ANY FALSIFICATION OF INCOME.

#39  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND HAD NO KNOWLEDGE OF ANY FALSE INFORMATION PROVIDED BY THE PETERBARKS.

# 40  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WERE UNAWARE OF ANY SUCH FALSIFICATION.

#41  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WERE UNAWARE OF ANY FALSIFICATION OF THE PURCHAS PRICE OF THE PROPERTY.

#42  THIS IS A FALSE STATEMENT.
DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND KNEW OF NO SUCH FALSIFICATION AND CONDONES NO ILLEGAL TRANSACTIONS. PLAINTIFF IS AWARE OF THIS BECAUSE DEFENDANTS LESTER LOVEJOY / AREA MORTGAGE OF MARYLAND REFUSED THEIR REQUEST TO HELP REFINANCE THE THOMAS LOAN OFF THEIR CREDIT LINE ONCE THEY MADE ME AWARE OF PROTENTAL FRAUD. PLAINTIFF OFFERED TO PROVIDE A V.O.M. TO ASSIST WITH THE REFINANCE.

#43,44,45,46,47 & 48  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WERE UNAWARE OF THESE ALLEDGE TRANSACTONS.

#51  PLAINTIFF WAS RESPONSOBLE FOR ALL QUALITY CONTROL AND FAILED TO EXECUTE IN A RESPONSIBLE MANNER.

#55  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAEG OF MARYLAND KNEW OF NO FALSIFICATION OF INFORMATION AND FELT THAT THE PLAINTIFFS QUALITY CONTROL WAS INCOMPENTANT.

# 59  DEFENTANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND DECLARE THIS STATEMENT TO BE FALSE.  NO RELATIONSHIP BETWEEN DEFENDANTS PROCOPIO, GUSMAN, ROCKCREEK TITLE AND LESTER LOVEJOY/AREA MORTGAGE OF MARYLAND EVER EXISTED. DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND ONLY ASSOCIATION WAS THROUGH ROBERT CHASTEEN.

#60  THIS IS A FALSE AND IRRESPONSIBLE CLAIM.  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND HAD NO SUCH SECRET AGREEMENT AS THE PLAINTIFF ALLEGES.  SINCE DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND REFUSED TO PARTICIPATE IN THE REFINANCING OF THE PETERBARKS LOAN THE PLAINTIFF WAS AWARE THAT LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND WOULD NOT KNOWINGLY BE A PARTY TO ANY SUCH ILLEGAL ACTIVITY.

#62 & 63  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND DENY ANY INVOLVEMENT IN CONSPIRACY.

#65  THIS IS A FALSE CHARGE.
DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND HAD NO PARTICIPATION IN ANY FALSIFY OF DOCUMENTS OR NEW OF ANY SUCH ACTIVITY.

#66 & 67  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND PARTICIPATED IN NO KNOWN FRAUDULENT ACTS.

#68  NO SUCH ACTS WHERE COMMITTED BY DEFENDANTS LESTER LOVEJOY OR AREA MORTGAGE OF MARYLAND.

#70  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND CONTEND NO SUCH ASSOCIATION EXITS.

#71 DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND CONTEND NO SUCH ENTERPRISE EXITS.

#72  THIS CHARGE IS FALSE AND IRRESPONSIBLE.
DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND
SEEK PROOF OF THIS ACCUSATION FOR IT IS EXTREMELY DAMAGING TO
BOTH LESTER LOVEJOY AND AREA MORTGAGE OF MARYLAND.

#73,74,75 & 76  DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE OF
MARYLAND DENY ANY SUCH INVOLVEMENT.

#79,80,81,82,83,84 & 85  DEFENDANTS LESTER LOVEJOY AND AREA
MORTGAGE OF MARYLAND DENY ANY INVOLVEMENT IN RACKETEERING
AND HAD NO SUCH KNOWLEDGE OF ANY RACKETEERING ACTIVITY.

## CONCLUSION

IN CONCLUSION DEFENDANTS LESTER LOVEJOY AND AREA MORTGAGE
OF MARYLAND DENY ANY WRONG DOING AND BELIEVE THESE CHARGES
ARE FAR REACHING AND IRRESPONSIBLE. THE PLAINTIFF NEEDS TO
EVALUATE ITS EDIDENCE PRIOR TO MAKING SUCH DAMAGING
ACCUSATIONS.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

FIRST GUARANTEE MORTGAGE CORPORATION ·
PLAINTIFF
VS.                                              : CASE NO. WMN 02 CV 326
RONALD PROCPIO, ET AL
DEFENDANT

CONCLUSION

THE PLAINTIFF FAILS TO SHOW ANY COLLUSION BETWEEN THE PARTIES NAMED IN THIS
CASE.
THE REASON BEING NONE EXIST, I LESTER H. LOVEJOY HAD NO KNOWLEDGE OF ANY
WRONG
DOING ON BEHALF OF THE PROCPIOS AND THE PETERBARKS OR ANY OTHER PARTY
NAMED IN
THIS CASE. LESTER . ALL PAPERWORK WAS RECEIVED DIRECTLY FROM THE PETERBARKS
NOT PROCOPIO. IT IS UNCLEAR THE ROLE THAT FIRST GUARANTEE ALLEGES I PLAYED
SINCE
THE PETERBARKS ARE NOT NAMED IN THE CIVIL CASE. THE CHARGES THAT THE
PETERBARKS PAID DEFENDENT GREEN $3000.00 IN ADVANCE TO SECURE FINANCING WAS
UNKNOWN TO ME.
IF THIS IS BEING PRESENTED AS EVIDENCE OF FRAUD. THEN WHY AREN'T THE
PETERBARKS BEING CHARGED.
LESTER H. LOVEJOY CATEGORICALLY DENIES ANY WRONG DOING IN CHARGES
22,23,24,25,26,27,28,29,30,31,32,33,34,35,36,37,38,39,40,41 AND 42, THE PETERBARK LOAN
CLOSED IN AUGUST OF 2000 YET I WAS NOT NOTIFIED OF A FIRST PAYMENT DEFAULT
UNTIL JULY OF 2001
NOT ALLOWING ME TO RESPOND IN ANY TIMELY MATTER. THIS FAILURE TO NOTIFY ME
OF
ANY POTENTIAL WRONG DOING OR OUT RIGHT FRAUD LEFT ME AND MY COMPANY IN A
VERY VULNERABLE POSITION TO ADDITIONAL HARM BY MR. PROCOPIO THE BUILDER
NAMED
IN THIS CASE.
IN RELATION TO THE COMPLAINT OF BREACH CONTRACT, FIRST GUARANTEE MORTGAGE
MUST ACCEPT RESPONSIBILITY FOR THE FAILURE TO ACT, THE QUALITY CONTROL ON
THIS LOAN WAS CONDUCTED BY FIRST GUARANTEE MORTGAGE.
IN REFERENCE TO CHARGES 58,59,60,61,62 AND 63 I PLAYED NO ROLE IN ANY
CONSPIRACY.
IN REFERENCE TO CHARGES 64,65,66,67,AND 68 I HAD NO KNOWLEDGE OF FRAUDULENT
ACTIVITY.
IN REFERENCE TO CHARGES 69,70,71,72,73,74,75,76, AND 77 I DENY HAVING ANY
INVOLMENT
IN THE ALLEGED RACKETEERING CHARGES.
IN REFERENCE TO CHARGES 78,79,80,81,82,83,84, AND 85 I ONCE AGAIN DENY ANY
INVOLVEMENT
OR HAD ANY KNOWLEDGE OF SUCH ACTIVITY.

THE CASE BEING PRESENTED BY FIRST GUARANTEE MORTGAGE CORP. HAS NO MERIT
AND
SHOULD BE DISMISSED. I CONCLUDED THAT THIS IS AN UNLIKELY EVENT AND
THEREFORE
REQUEST A HEARING.

**EXHIBIT B**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FIRST QUARANTY MORTGAGE CORP.,          :
          Plaintiff,

                                      :

      v.

                                        :        CIVIL ACTION NO.: MJD-02-326

RONALD PROCOPIO, et. al.,
          Defendants          :

---

## DEFENDANT LOVEJOY'S ANSWER TO FIRST AMENDED COMPLAINT

**COMES NOW,** LESTER H. LOVEJOY, by and through counsel, and answers Plaintiff's

First Amended Complaint, responding to each numbered paragraph therein as follows:

1. Defendant is without knowledge as to the truth of this assertion.

2. Defendant is without knowledge as to the truth of this assertion.

3. Defendant is without knowledge as to the truth of this assertion.

4. Defendant admits that he is an adult resident of the State of Maryland. All remaining

   allegations are denied.

5. Defendant is without knowledge as to the truth of this assertion.

6. Defendant denies the allegations in this paragraph.

7. Defendant is without knowledge as to the truth of this assertion.

8. Defendant is without knowledge as to the truth of this assertion.

9. Defendant is without knowledge as to the truth of this assertion.

10. Defendant is without knowledge as to the truth of this assertion.

**EXHIBIT B**

11.  Defendant is without knowledge as to the truth of this assertion.

12.  Defendant admits that Plaintiff is engaged in the business of residential mortgage loan origination. Defendant is without knowledge as to the truth of the remaining assertions.

13.  Defendant is without knowledge as to the truth of this assertion.

14.  Defendant denies this allegation.

15.  Defendant denies this allegation.

16.  Defendant denies this allegation.

17.  Defendant denies this allegation.

18.  Defendant admits the allegations contained in this paragraph.

19.  Defendant is without knowledge as to the truth of this assertion.

20.  Defendant denies the allegations contained in this paragraph.

21.  Defendant admits that the contract reflects that the Peterbarks paid an initial deposit of $75,000 but denies the remaining allegations as stated.

22.  Defendant denies the allegations contained in this paragraph.

23.  Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

24.  Defendant is without knowledge as to whether the "Deposit Verification" is a fake. Defendant denies all remaining allegations contained in this paragraph.

25.  Defendant is without knowledge as to whether the "Rent Verification" is a fake. Defendant denies all remaining allegations contained in this paragraph.

2

**EXHIBIT B**

26. Defendant is without knowledge as to whether the defendant Chasteen marked that the Handwritten Loan Application was taken by mail. All remaining allegations in this paragraph are denied.

27. Defendant denies the allegations contained in this paragraph, except that the Defendant is without knowledge as to the persons who marked the Typed Loan Application as being taken by telephone.

28. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

29. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

30. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

31. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

32. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

33. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

34. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

3

**EXHIBIT B**

35. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

36. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

37. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

38. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

39. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

40. Defendant denies the allegations contained in paragraph 40 so far as they relate to himself and Area Mortgage of Maryland. Defendant is without knowledge as to the truth of the remaining allegations.

41. Defendant admits that the loan closed on or about August 30, 2000. Defendant is without knowledge as to the truth of the remaining assertions contained in this paragraph.

42. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

43. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

4

**EXHIBIT B**

44. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

45. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

46. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

47. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

48. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

49. Defendant is without knowledge as to the truth of the assertions contained in this paragraph.

50. Defendant admits that "Area Mortgage" did not purchase the "Loan" but denies that Plaintiff made a demand as stated in the complaint.

51. Defendant reasserts his answers to the paragraphs numbered 1-50.

52. Defendant denies this allegation as written.

53. Defendant denies the allegations in this paragraph.

54. Defendant denies the allegations in this paragraph.

55. Defendant denies the allegations in this paragraph.

56. Defendant reasserts his answers to the paragraphs numbered 1-55.

57. Defendant denies the allegations in this paragraph.

5

**EXHIBIT B**

58. Defendant denies the allegations in this paragraph.

59. Defendant denies the allegation in this paragraph.

60. Defendant denies the allegation in this paragraph.

61. Defendant denies the allegation in this paragraph.

62. Defendant reasserts his answers to the foregoing paragraphs No. 1-61.

63. Defendant denies the allegations contained in this paragraph.

64. Defendant denies the allegations contained in this paragraph.

65. Defendant denies the allegations contained in this paragraph.

66. Defendant denies the allegations contained in this paragraph.

67. Defendant reasserts his answers to the foregoing paragraphs nos. 1-66.

68. Defendant denies the allegations contained in this paragraph.

69. Defendant denies the allegations contained in this paragraph.

70. Defendant denies the allegations contained in this paragraph.

71. Defendant denies the allegations contained in this paragraph.

72. Defendant denies the allegations contained in this paragraph.

73. Defendant denies the allegations contained in this paragraph.

74. Defendant denies the allegations contained in this paragraph.

75. Defendant denies the allegations contained in this paragraph.

76. Defendant reasserts his answers to the paragraphs no. 1-75.

77. Defendant denies the allegations contained in this paragraph.

78. Defendant denies the allegations contained in this paragraph.

6

**EXHIBIT B**

79. Defendant denies the allegations contained in this paragraph.

80. Defendant denies the allegations contained in this paragraph.

81. Defendant denies the allegations contained in this paragraph.

82. Defendant denies the allegations contained in this paragraph.

83. Defendant denies the allegations contained in this paragraph.

## FIRST AFFIRMATIVE DEFENSE

The claims made by Plaintiff are barred by virtue of an indemnification, "hold harmless" agreement, or a settlement agreement.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff is estopped from bringing this case due to promises made to Lovejoy, which were reasonably relied on by Lovejoy.

## THIRD AFFIRMATIVE DEFENSE

The Plaintiff has failed to join the remaining partners of the defendant Area Mortgage, parties whose interests are not adequately represented in this action and who are needed for the just adjudication of this action.

## FOURTH AFFIRMATIVE DEFENSE

The defendant referred to in the complaint as "Area Mortgage of Maryland" is a non-existent entity and Defendant is not liable for any of its obligations.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff has not reasonably relied on any promises or assertions by Lovejoy.

7

**EXHIBIT B**
SIXTH AFFIMATIVE DEFENSE

Plaintiff has failed to plead its allegations of fraud and conspiracy with particularity.

SEVENTH AFFIRMATIVE DEFENSE

No agency relationship existed between Lovejoy and the defendants.

EIGHTH AFFIRMATIVE DEFENSE

Defendant is not personally liable for any acts referred to in the complaint because he did

not personally participate in any tortious or wrongful acts and because neither he nor a

general partnership entered into the alleged contract.

NINTH AFFIRMATIVE DEFENSE

The complaint fails to state a claim under the Racketeering Influences Corrupt

Organizations Act (18 U.S.C. §§ 1961 et. seq.).

8

EXHIBIT B

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of accord and satisfaction.

**WHEREFORE**, having responded to each of the allegations in Plaintiff's First Amended

Complaint, Defendant requests that the Court award Plaintiff nothing and award

Defendant his attorney's fees and costs.

Respectfully submitted by:

BARBER & ASSOCIATES, P.C.,

By: _____

Andre P. Barber,
Counsel for Lester H. Lovejoy
1825 I Street, NW
Suite 400
Washington, DC 20006
(202) 479-0325
(202) 479-0326 facsimile

9

EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FIRST GUARANTY MORTGAGE CORP.,    :
         Plaintiff,

                                 :     CIVIL ACTION NO.: MJD-02-326

    v.

                                 :

RONALD PROCOPIO, et. al.,
         Defendants            :

---

## DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

### DEFINITIONS & INSTRUCTIONS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, the Defendant, Lester H.

Lovejoy, hereby propounds the following Interrogatories upon the Plaintiff, First Guaranty

Mortgage Corporation ("Plaintiff"). These Interrogatories are to be responded to within thirty

(30) days of their service upon Plaintiff. Responses should be returned to Defendant's counsel,

Andre P. Barber, Esq., at Barber & Associates, P.C., 1825 I Street, NW, Suite 400, Washington,

D.C. 20006.

(a) For purposes of this discovery request, the following terms, definitions and

instructions shall apply. Further, Plaintiff is required to respond to each and every one of the

Interrogatories fully, in writing and under oath.

(b) If any of the Interrogatories produced herein cannot be responded to in full, answers

should be presented to the best of the person's ability and to the fullest extent possible. The

answering parties must ensure that they specify the reason for their inability to fully answer the

### EXHIBIT C

question, stating whatever information, knowledge or belief they may have with respect to the unanswered portion.

(c) These Interrogatories are continuing in character so as to require you to file supplementary answers if you obtain further or different information before trial.

(d) Where the name or identity of a person is required, please state the person's full name, home and business address.

(e) Each interrogatory shall be answered by the person or persons best able to give a full, detailed and complete response to the particular question presented.

(f) Where knowledge or information in possession of a party is requested, such request includes knowledge of the party's agents, employees, representatives, and unless privileged, his/her attorneys. When answer is made by corporate entity, state the name, address and title of the person(s) supplying the information and making the affidavit, and state the source of his or her knowledge with regard to the information presented.

(g) Unless otherwise stated, these Interrogatories refer to the underlying facts mentioned in the pleadings that have been filed in this case.

(h) Where the singular is used, it shall include the plural.

(i) The pronoun "you" refers to the party to whom these Interrogatories are addressed and the parties mentioned in clause (f).

### INTERROGATORIES

1. State whether you have obtained any oral or written statement from any person concerning the subject matter of this litigation, and if so, set forth as to each statement:
   a. the name and address of each person from whom a statement was obtained;
   b. if oral, whether the statement was recorded and/or transcribed, and if so, the

EXHIBIT C

name and address of the person who has custody of the recording or transcription and attach a hereto true copies of all recordings and transcriptions;

c.  if oral and not record or transcribed, the substance of the statement; and

d.  if written, the identity of, and attach hereto true copies of, all written statements.

2.  So far as is pertinent to your amended complaint, identify each false statement or omission of fact that was made to Plaintiff by any person or entity, whether oral or written, and in so doing (i) state the date of the statement; and (ii) if you maintain that Lovejoy or Area Mortgage knew the statement was false at the time the statement was made to Plaintiff, (ii) specify those facts showing that Lovejoy or Area Mortgage knew that each identified statement was false and the source and substance of all evidence indicating that Lovejoy knew the statement was false at the time the statement was made to Plaintiff; and (iii) identify the person(s) having knowledge of Lovejoy's and/or Area Mortgage's culpability.

3.  State those facts supporting your claim that Lovejoy and Area Mortgage participated in a conspiracy as alleged in your amended complaint. In your answer, identify all conspirators, all agreement(s) reached by Lovejoy and/or Area Mortgage with the conspirators, and all actions taken in furtherance of the conspiracy, identifying the party who took each such action.

   a.  With respect to any actions taken by Lovejoy or Area Mortgage, detail all facts that support that Lovejoy or Area Mortgage wilfully, intentionally, or maliciously performed the acts in furtherance of the conspiracy with the intent to harm the Plaintiff and/or to benefit the defendants and others, including the co-conspirators, at the expense of the Plaintiff, and

   b.  Identify the persons having knowledge of Lovejoy's and/or Area Mortgage's (i)) joining the conspiracy and/or (ii) taking overt acts in furtherance thereof

4.  With respect to each cause of action asserted in your complaint, explain in detail how Plaintiff has been damaged, the specific amount of actual and other damages sought, and how you calculated Plaintiff's damages. Identify all written documents which support your claims for damages.

5.  Regarding the loan that was made to the Peterbarks, specify all actions taken by Lovejoy and/or Area Mortgage and any of their agents to structure the loan transaction and "related documents" as alleged in paragraph 70 in your amended complaint.

6.  Specify in detail all actions taken by Plaintiff in connection with structuring or underwriting the loan and "related documents" referred to paragraph 70 of your

**EXHIBIT C**

amended complaint, including all steps performed in connection with due diligence. Identify each person who took all actions on Plaintiff's behalf, including the person's job title.

7. State all facts that support your contention that Lovejoy and/or Area Mortgage engaged in a pattern of racketeering activity as alleged in paragraph 72 of your complaint and detail all evidence which support your factual contentions.

8. Describe in detail the pattern of racketeering activity alleged for each RICO claim, setting forth for as to each incident comprising racketeering conduct:
   a. the date, time, and place where the racketeering conduct was performed; and
   b. the manner, if any, each individual racketeering conduct was related to another (i.e., having the same or similar purpose, result, participants, victim(s), method of commission, or other means of relationship).

9. Identify all litigation or other proceedings commenced by or against Plaintiff during the prior seven years, including any complaints or investigations made against Plaintiff by any governmental agent or regulatory body.

10. As to each person who you expect to call at trial as an expert, set forth:
   a. the name and address of the expert;
   b. the field of experience of the expert;
   c. the qualifications and training of the expert, including professional and practical experience, educational institutions attended and degrees obtained, and as to each listed, set forth the relevant dates and the nature and identity of each institution attended and of each place at which experience or training was received;
   d. the exact title of any article or publication written by the expert relating in any way to his or her field of expertise or the subject matter of his or her anticipated testimony, and as to each such article or publication, identify the publisher and set forth the date and location of the publication;
   e. the subject matter upon the expert is expected to testify;
   f. the substance of the facts and opinions to which the expert is expected to testify;
   g. a summary of the grounds for each such opinion;
   h. a detailed description of any and all oral reports, conclusions or comments ever prepared by the expert with respect to the subject matter of this litigation;
   i. the identity of, and attach true copies of, any and all written reports, conclusions or comments (whether preliminary or final) ever prepared by the expert with respect to the subject matter of this litigation;
   j. a complete list of all judicial, administrative and arbitration proceedings in which the expert has testified or for which the expert has prepared a report; and
   k. produce a copy of the expert's disclosure required by Rule 26)(a), F.R.Civ.P.

**EXHIBIT C**

Respectfully submitted,

Andre P. Barber
Barber & Associates, P.C.
1825 I Street, NW
Suite 400
Washington, DC 20006
(202) 479-0325

EXHIBIT C-1
# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FIRST GUARANTY MORTGAGE CORP., :
              Plaintiff,

                               :        CIVIL ACTION NO.: MJD-02-326

      v.

                                 :

RONALD PROCOPIO, et. al.,
              Defendants           :

---

## DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

### DEFINITIONS & INSTRUCTIONS

      Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the Defendant, Lester H. Lovejoy, hereby submits the following request for production of documents upon the Plaintiff, First Guaranty Mortgage Corporation ("Plaintiff"). This request for documents must be responded to within thirty (30) days of their service upon Plaintiff. All documents requested should be delivered to Defendant's counsel, Andre P. Barber, Esq., at Barber & Associates, P.C., 1825 I Street, NW, Suite 400, Washington, D.C. 20006.

### Definitions and Instructions

      For the purposes of this request, the following terms, definitions and instructions shall apply:

      (a) The terms "this case" and "this litigation" refer to the action styled First Guaranty Mortgage Corp. v. Procopio et. al., Civil Case No. MJD-02-326.

      (b) The term "Plaintiff" shall mean First Guaranty Mortgage Corp., its attorneys,

**EXHIBIT C-1**

representatives and agents, as well as any and all parent companies, subsidiaries, affiliates, predecessor or successor companies.

(c) The term "Defendant" shall mean all persons and entities named as a defendant in this action.

(d) The terms "refer", "relate", and "concern" include, but are not limited to the following meanings: discusses, mentions, describes, responds to, identifies, constitutes, contains, eludes to, comments upon, explains, analyzes, evidences, sets forth, summarizes and characterizes, either directly or indirectly, or is in any way relevant to the given subject.

(e) The pronoun "you" refers to the Plaintiff and the parties mentioned in clause (f) below.

(f) Where the singular is used with reference to any person, document or item, it shall include the plural.

(g) The term "communication" as used herein means any written or oral statement, dialogue, colloquy, discussion or conversation, and includes any transfer of thoughts or ideas between persons by means of documents, such as, by way of example and not limitation, the transfer of data from one location to another by electronic or similar means.

(h) The term "document" as used herein means all writings of any kind, including drafts, originals and copies in Plaintiff's possession, custody or control, including, but not limited to: correspondence, letters, memoranda, notes, reports, papers, files, books, records, contracts, agreements, telegrams and all other communications whether sent or received; computer produced printouts, diary entries and calendars, draft tables, compilations, tabulations, charts, graphs, recommendations, accounts, worksheets, work papers, minutes and other written records

2

EXHIBIT C-1

and recordings of any conferences, meetings, visits, interviews or telephone conversations; bills,

statements, invoices, and other records of obligations and expenditures; canceled checks,

vouchers, receipts and other records of payments; analyses; surveys; transcripts of testimony;

records and un-transcribed stenographic notes; statements; interviews; affidavits; printed matter,

including but not limited to, published articles, speeches, newspaper clippings and photographs.

The term "document" also includes voice recordings, films, video tapes, and other data

compilations from which information can be obtained, such as materials used in data processing.

Moreover, the term "document" encompasses any draft of a document and duplicate of a

document which contains annotations or other writings in addition to that contained on the

original document.

   (i) Plaintiff is directed to respond to each and every one of the discovery requests set forth

herein: separately, fully, in writing and under oath.

   (j) These requests seek all information and documents known by or available to Plaintiff

regardless of whether such information or documents are possessed directly by Plaintiff, any of

Plaintiff's agents, servants, employees, subordinates, representatives, or, unless otherwise

privileged, by Plaintiff's attorneys.

   (k) If any of the requests to produce herein cannot be responded to in full, Plaintiff should

comply as fully and completely as possible, specify the reasons for the inability to produce the

remainder, and state whatever information, knowledge or belief Plaintiff may have with respect

to the unproduced portions.(m) These document requests are continuing in character so that

Plaintiff is required to file supplemental answers or responses should Plaintiff obtain additional

3

## EXHIBIT C-1

relevant information or documents subsequent to the initial response to these document requests.

(l) If any information or document is withheld from production on the grounds of any privilege, including the attorney-client privilege or attorney work product privilege, Plaintiff shall describe in full: (1) the subject matter of the document, (2) the privilege asserted, (3) the author, date and title of the document, and (4) each addressee or recipient of the document.

## REQUESTED DOCUMENTS

1.    All documents mentioned, referenced or referred to in your amended complaint, including but not limited the "Sales Contract", the "Sales Contract Verification", the "Deposit", the "Deposit Verification", the "Rent Verification" the "Handwritten Loan Verification", the "Typed Loan Verification", and the "Settlement Statement", as said terms are defined in your amended complaint.

2.    Copies of all documents which in any way pertain to the racketeering activity alleged in the amended complaint, including but not limited to all underwriting-related documents, appraisals, loan applications, settlement statements, contracts, memorandums, correspondence, notes, statements, loan funding documents, settlement statements, and agreements.

3.    All documents containing or constituting an agreement between any of the defendants, including Area Mortgage, and Plaintiff.

4.    All documents containing any statement(s) made by any of the defendants so far as the statement(s) pertain to any allegation made in Plaintiff's complaint or any factual assertions relevant to the complaint.

5.    All documents that evidence that Area Mortgage is a general partnership.

6.    All documents, including manuals, which refer to Plaintiff's loan underwriting practices, policies, procedures, or criteria, including but not limited to documents which refer to procedures for verifying information provided in connection with a loan application, standard loan practices, and the loan products offered by Plaintiff or by such other lenders or funding sources utilized by Plaintiff.

7.    All documents pertaining to the loan that was made to the Peterbarks, as referred to in the amended complaint, including but not limited to banking account statements showing all fees received by Plaintiff, and correspondence between Plaintiff and any lender or any other party.

4

## EXHIBIT C-1

8. All documents that support your claim for damages or references any amounts sought by Plaintiff as damages;

9. All expert witness reports.

10. All letters of complaints, statements, forensic accounting reports, or other documents reflecting claims by Plaintiff or any third parties that allege any loan other than the Peterbarks loan was fraudulent or obtained by virtue of a fraud.

11. All documents evidencing any so called "Mary Carter" agreements or any other agreements or statements made by any person or entity who is believed to have knowledge of any facts related to the allegations made in the amended complaint, specifically including but not limited to any agreements made by any person who is believed to have been a co-conspirator with any of the defendants.

12. All documents evidencing any consideration which was ever received or accepted or contemplated to be received or accepted by Plaintiff or its agents from any person or entity who is believed to have knowledge of any facts alleged in the amended complaint.

13. All documents which refer to any statements that were made during the February 18th, 2001 meeting between Plaintiff and Lovejoy at the office of Ron Procopio.

Respectfully submitted,

Andre P. Barber
Barber & Associates, P.C.
1825 I Street, NW
Suite 400
Washington, DC 20006
(202) 479-0325

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FIRST GUARANTY MORTGAGE CORP.,        :
      Plaintiff.

                               :        CIVIL ACTION NO.: MJD-02-326

     v.

                               :

RONALD PROCOPIO, et. al.,
      Defendants        :

## ORDER GRANTING DEFENDANT LOVEYJOY'S MOTION TO FILE AN ANSWER TO THE FIRST AMENDED COMPLAINT AND LOVEJOY"S MOTIONS TO MODIFY THE SCHEDULING ORDER

**UPON CONSIDERATION** of the defendant, Lester H. Lovejoy's motion to file an answer to the Plaintiff's First Amended Complaint and Lovejoy's motions seeking to modify this Court's Scheduling Order entered on November 4, 2003, after having considered the submissions by all parties, and concluding that good cause is shown by Lovejoy's motions, it is hereby

**ORDERED**, that the discovery deadline as provided in the Court's Scheduling Order is hereby extended such that the discovery period shall not expire until ninety (90) days after entry of this Order ("Extended Discovery Period"); and it is

**FURTHER ORDERED**, that the dispositive motions deadline provided for in the Court's Scheduling Order is hereby extended such that the dispositive motions deadline shall not expire until twenty one (21) days after the Extended Discovery Period expires; and it is hereby

**FURTHER ORDERED**, that Lovejoy's proposed Answer is hereby deemed filed in response to Plaintiff's Amended Complaint; and it is hereby

**FURTHER ORDERED**, that Lovejoy's proposed discovery requests are hereby deemed to be served on Plaintiff.

.

**SO ORDERED** this _____ day of _____, 2003.

_____

MARVIN A. GARBIS,
JUDGE, UNITED STATES DISTRICT
COURT

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FIRST QUARANTY MORTGAGE CORP.,    :
      Plaintiff,

                      :

    v.

                      :      CIVIL ACTION NO.: MJD-02-326

RONALD PROCOPIO, et. al.,
      Defendants          :

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of September, 2003, a copy of the foregoing motion to file answer to the amended complaint and for modification of scheduling order was mailed to the following parties via U.S mail, postage prepaid: (1) Gerald F. Chapman, 6917 Arlington Road, Suite 350, Bethesda Maryland 20814; (2) Robert H. Hillman, Magazine & Hillman PC, 416 Hungerford Drive, Suite 435, Rockville MD 20850, (3) Terrence C. McAndrews, Law Offices of Terrence McAndrews, 2000 Century Plaza, 10632 Little Patuxent Pkwy, Suite 446, Columbia MD 21044; and (4) Ian A. Williams, 717 D Street NW, Suite 400, Washington, DC 20004.

Andre P. Barber