IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| First Guaranty Mortgage Corp. ) | Case No. MJG 02-326 |
| ) | Consolidated with MJG 01-1430 |
| v.  ) | |
| ) | |
| Ronald Procopio, et. al.  ) | |

**DEFENDANT RONALD PROCOPIO'S AND MARGARET PROCOPIO'S  MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants Ronald Procopio and Margaret Procopio, by and through their attorney and pursuant to FRCP 56, hereby oppose plaintiff First Guaranty Mortgage Corporations' motion for summary judgment.  As set forth below, there are disputed material factual issues that as a matter of law preclude summary judgment in First Guaranty's favor.

**1.  BACKGROUND**

The nub of this case is First Guaranty's contention that during the summer of 2000 the Procopios and various other defendants 1) conspired to overvalue a property located at 751 Gleneagles Drive, Fort Washington, MD prior to selling it to Robert and Demeta Peterbark and 2) that Mr. Procopio and others conspired to overvalue a property located at 12704 Norwood Lane, Fort Washington, MD prior to selling it to Ronald and Latissa Thomas.  There is some, but not complete, commonality between the defendants sued in connection with each transaction.[1]

First Guaranty alleges that it authorized a loan to the Peterbarks in the amount of $330,000.00 to assist the Peterbarks with their purchase of the Gleneagles property for $440,000.00 on August 30, 2000.   Mr. Procopio had purchased that property only

---

[1] These cases were filed separately, but were essentially consolidated on November 4, 2002.

three months earlier for a mere $215,000.00 and the deed reflecting that purchase had been recorded in Prince George's County, Maryland on May 31, 2000. Plaintiff's Ex. 73. The Peterbarks applied for the loan from First Guaranty on June 12, 2000. Plaintiff's Exs. 56-58.

First Guaranty claims that it learned the Gleneagle property was worth less than $330,000.00 when it foreclosed upon the property following the Peterbarks' immediate default. First Guaranty further claims that it expended approximately $52,050.00 to renovate the Gleneagles property prior to selling the note at a loss of $100,000.00.

In connection with the Gleneagles transaction, First Guaranty sued 1) the sellers of the property, Ronald and Margaret Procopio, 2) the mortgage brokerage firm and its principal, Area Mortgage and Lester Lovejoy, 3) the Area Mortgage broker who allegedly brokered the loan, Robert Chasteen, 4) two silent partners of Area Mortgage, Robert Bell and Torry Laverson,[2] 5) the settlement attorney and her firm, Nancy Gusman and Rock Creek Associates, Inc., and 6) the individual who allegedly brokered the transaction, Andre Green.[3] First Guaranty did not file suit against the Peterbarks, but instead secured their cooperation in exchange for the promise not to sue. Deposition of David Neal, p. First Guaranty's claims sound in breach of contract, fraud, conspiracy and RICO violations arising out of supposed mail fraud

---

[2] First Guaranty has dismissed Messrs. Bell and Laverson.

[3] First Guaranty has obtained a default judgment against Mr. Green.

and supposed wire fraud.

First Guaranty further alleges that it authorized a loan in the amount of $376,000.00 so that the Thomases could purchase the Norwood Lane property for $470,000.00 on September 22, 2000. Mr. Procopio had previously purchased that same property on July 31, 2000 for a mere $202,600.00 and the deed evidencing that purchases was recorded on August 4, 2000. Plaintiff's Ex.25. The Thomases applied for their loan on August 16, 2000. Plaintiff's Ex.5. First Guaranty claims that it did not learn that the Norwood Lane property was worth less than $376,000.00 until after it initiated foreclosure proceedings following the Thomas' default. Finally, First Guaranty claims that it lost $200,000.00 in connection with its sale of the Norwood Lane note.

In connection with the Norwood transaction, First Guaranty has filed suit against some of the same individuals as in the Gleneagles transaction, but has limited its theories of recovery to breach of contract, civil conspiracy and fraud. First Guaranty has specifically sued 1) Mr. Procopio, but not Mrs. Procopio, 2) Area Mortgage and Mr. Lovejoy, 3) Ronald and Latissa Thomas, 4) Messrs. Bell and Laverson and 5) two appraisers, Jeffrey Lewis and Clarence Galloway.[4]

It is undisputed that on August 9, 2000 First Guaranty entered into a nonexclusive brokerage agreement with Area Mortgage. Plaintiff's Ex.3. By its plain and explicit terms, the exclusive brokerage agreement requires Area Mortgage to reimburse

---

[4] Messrs. Lewis, Galloway, and Thomas and Ms. Thomas have been dismissed for lack of service. First Guaranty has voluntarily dismissed Messrs. Bell and Laverson.

3

and indemnify First Guaranty for any loans that fall into a default status within six months after closing and to repurchase any loan that contains a material misrepresentation. Id. Neither the Thomases nor the Peterbarks ever made any payments and thus both fell into default within six months. <u>Affidavit of David Neal in Support of plaintiff's Motion for Summary Judgment</u> (hereafter, Neal Affidavit). First Guaranty apparently looked to Area Mortgage to honor its contractual obligations. Area Mortgage, however, has refused to make First Guaranty whole.

First Guaranty seeks summary judgment against both Mr. Procopio and Mrs. Procopio in the Gleneagles case and against Mr. Procopio in the Norwood Lane case based on various unviable legal theories. First Guaranty specifically requests damages in the amount of $1,056,150.00 and attorneys' fees in the amount of $112,253.54.

**II. ARGUMENT**

<u>A. The Standard For Considering Summary Judgment Motions</u>

First Guaranty has identified the appropriate legal standard for district courts to utilize when considering motions for summary judgment. Summary judgment is appropriate only where there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Moreover, all facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. <u>Matsushita Electronic v. Zenith</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

<u>B. First Guaranty Is Not Entitled to Judgement As A Matter Of Law Against the Procopios/Mr. Procopio In Either Case As To Its Breach Of Contract Claim</u>

This Court cannot enter summary judgment against the Procopios in the Gleneagles matter or against Mr. Procopio alone in the Norwood Lane matter as to First Guaranty's breach of contract claim. Although neither complaint specifies the target of those allegations, it is unmistakable that First Guaranty's breach of contract claim arises out of the nonexclusive brokerage agreement and thus extends only to Area Mortgage and perhaps its principals. The Procopios are not parties to that contract and quite simply cannot be held liable for any breach by Area Mortgage.

Indeed, Area Mortgage's failure to honor its contractual obligations insulates the Procopios from liability for the remaining causes of action. But for Area Mortgages' breach, First Guaranty would have suffered no damages. In the absence of damages, First Guaranty's claim would have no basis for recovering from the Procopios for either civil conspiracy, fraud or RICO violations. <u>Yousef v. Trust Bank Savings</u>, 81 Md. App. 527, 538, 568 A.2d 1134, 1139 (Md. App. 1990) (actual legal damages is an essential element of a civil conspiracy claim); <u>James v. Weisheit</u>, 279 Md. 41, 367 A.2d 482 (Md. 1977) (actual damages are an essential element in a fraud action). <u>Sedima v. Imrex</u>, 473 U.S. 479,495, 105 S.Ct. 3275,3281 (1985) (actual injury is a predicate to RICO damage award).

Absent a determination of the contract obligations between First Guaranty and Area Mortgage, the dispute between the

5

Procopios/Mr. Procopio and First Guaranty constitutes a nonjusticiable controversy that this Court cannot resolve at this time. While it is true that this Court can preside over the adjudication of the Procopios'/Mr. Procopio's hypothetical liabilities to First Guaranty in conjunction with the same trial that will resolve Area Mortgage's liability to First Guaranty, this Court cannot find the Procopios/Mr. Procopio liable as a matter of law at this time. In other words, resolution of Area Mortgage's liability so informs First Guaranty's rights vis-à-vis the Procopios as to preclude summary judgment against them.

### C. Summary Judgment Against The Procopios In the Gleneagles Case And Mr. Procopio In the Norwood Lane Case Would Be Improper As To The Fraud And Civil Conspiracy Claims

Contrary to First Guaranty's assertions, there is substantial doubt that Mr. Procopio individually and the Procopios together, regarding the Norwood Lane and Gleneagles properties respectively, defrauded First Guaranty. While it is true that First Guaranty has offered a substantial amount of documentation demonstrating that it was the recipient of material misrepresentations regarding the Gleneagles and Norwood Lane properties, it has not submitted any documentation or testimonial proof conclusively demonstrating that the Procopios were actually involved.

#### Insufficient Proof of Misrepresentations by the Procopios

First Guaranty's best evidence, the affidavits of Demetra Peterbark and Robert Peterbark, describe the circumstances of the Gleneagles transaction and address the conduct of Messrs. Green, Chasteen and Lovejoy and Area Mortgage and themselves at length. There is not a single averment, however, of falsehood by the Procopios. The only reference to the Procopios is that the

6

closing took place at their office, rather than that of Rock Creek Associates as stated in the settlement statement. If this fact is true, it is hardly a material misrepresentation.

More importantly, the Peterbarks' affidavits reference, identify and describe most, if not all, the important documents that were generated in connection with their purchase of the Gleneagles property. In their final affirmation (<u>Ronald Peterbark</u>, para. 28; <u>Demeta Peterbark</u>, para. 28) they both state unambiguously that "all the foregoing documents which contained false statements were prepared by and presented to us by defendants Andre Green, Robert Chasteen, Area Mortgage of Maryland and Lester Lovejoy". Conspicuous, by absence, is the allegation of wrongdoing by the Procopios. Because the Peterbarks will be First Guaranty's primary trial witnesses in the Gleneagles case, this Court cannot grant summary judgment against the Procopios in that matter.

First Guaranty also relies on the affidavit of its president David Neal, who represents that based on his

> "experience and knowledge of the residential mortgage lending business, the …fraud and misrepresentation in connection with the Norwood Transaction and with the Gleneagles Transaction could not have occurred without the knowledge and active participation of defendants Ronald Procopio, Margaret Procopio, Area Mortgage, Lester Lovejoy, Robert Chasteen and Rock Creek Associates, Inc."

With all due respect to Mr. Neal, this is hardly a basis for prevailing at trial and certainly for summary judgment for several reasons. First, Mr. Neal has an obvious interest in the outcome of the case. Second, Mr. Neal's affidavit and the comments of

First Guaranty's attorney, do not qualify Mr. Neal as an expert. Finally, even if Mr. Neal qualifies as such an expert, his opinion as to the ultimate issue is hardly dispositive. Only the jury can decide this question.

No Reasonable Reliance

Summary judgment is also improper as a matter of law because First Guaranty has not demonstrated that it reasonably relied on the alleged false representations by the Procopios or any of the other defendants. Mr. Neal's affidavit is silent on the issue of reliance and First Guaranty has offered no evidence evidencing that it reasonably relied on any representations in connection with either the Gleneagles or the Norwood Lane transaction.

This lack of evidence is fatal to First Guaranty's motion because reasonable reliance is an essential element of both fraud and civil conspiracy. Savings Bank Retirement System v. Clarke, 258 Md. 501, 265 A.2d 921 (Md. 1970). Whether the reliance was justified is viewed by the standard of a person of ordinary business prudence. Babb v. Boylard, 194 Md. 603, 72 A.2d 13 (Md. 1950). First Guaranty cannot prevail in light of this standard and the salient facts that govern this case.

As previously stated, Mr. Procopio purchased the Gleneagles property on May 18, 2000 for $215,000.00 and the sale was recorded on May 31, 2000. Plaintiff's Exhibit No. 73. This publicly recorded fact placed First Guaranty on notice to scrutinize carefully a loan application for $330,000.00 to assist with the purchase of a property appraised to be worth $440,000.00. Buttressing the proof of First Guaranty's clear notice to

investigate is the fact that the Peterbarks applied for their loan on June 12, 2000, a mere twenty-five days after Mr. Procopio purchased the Gleneagles property.

Likewise, Mr. Procopio purchased the Norwood Lane property for $202,600.00 on July 31, 2000. Again, this publicly recorded fact alerted First Guaranty to scrutinize the Thomas's ensuing application for $376,000.00 to support a purchase in the amount of $470,000.00, particularly as the Thomases submitted their application on August 16, 2000, a mere sixteen days after Mr. Procopio had purchased the Norwood Lane property for $270,000.00 less than its proposed resale price.

First Guaranty, however, failed to undertake its due diligence obligations as to either loan. Therefore, this Court should deny summary judgement in light of the implausibility of any claim by First Guaranty that it reasonably relied on the representations at issue in either the Gleneagles or the Norwood Lane case.

### D. This Court Cannot Grant Summary Judgment Against The Procopios As To The RICO Allegations In The Gleneagles Case

As previously stated, First Guaranty has alleged RICO Act violations, specifically under 18 U.S.C. 1962(c), which imposes liability upon "any person employed by or associated with any enterprise, ... whose activities affect interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." First Guaranty has also filed suit under 18 U.S.C. 1962(d), which simply imposes liability upon persons who conspire to violate, inter alia, subsection (c) as set forth above.

RICO thus imposes liability on entities that associate with or join in an enterprise[5] that conducts or participates in the conduct of its affairs through a pattern of racketeering activity. Racketeering activity includes, inter alia, various specifically statutorily defined criminal acts, including wire fraud and mail fraud[6], which First Guaranty has admittedly pled. At least two predicate racketeering acts are necessary to establish a pattern of racketeering activity, 18 U.S.C. 1961(5).

Evidence of two such predicate acts, however, is not sufficient in itself to form a pattern of racketeering activity, Andersson v. Foundation For Advancement, Education And Employment of American Indians, 155 F.3rd 500, 505 (4th Cir. 1998), and in fact rarely, if ever, gives rise to a pattern of racketeering activity under RICO as a practical matter. Sporadic activity does not constitute a pattern, H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 233, 239, 109 S.Ct. 2893, 2900 (1989). A plaintiff must plead and prove that 1) the racketeering predicate acts are related **and** 2) amount to or pose a threat of continued criminal activity, Id. 492 U.S. at 239, 109 S.Ct. at 2900.

In order to demonstrate actual or threatened continued criminal conduct by the Procopios and others under RICO, First Guaranty must prove a threat of "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being", Andersson, supra, 155 F.3rd at 506 (4th Cir. 1998); Menasco, Inc. v.

---

[5] An enterprise is defined to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, 18 U.S.C. 1961(4).

[6] 18 U.S.C. 1961(1)

Wasserman, 886 F.2d 681 (4th Cir. 1989). First Guaranty has not offered evidence support such a threat. A single, limited fraudulent scheme is not of itself sufficient to constitute a pattern of racketeering activity, International Data Bank, Ltd. V. Zepkin, 812 F.2d 149, 154 (4th Cir. 1987). Therefore, it is axiomatic that summary judgment is inappropriate.

The Fourth Circuit has specifically held that caution is particularly appropriate where, as here, the alleged predicate acts supporting a RICO claims are mail and wire fraud, Andersson, 155 F.3rd at 506; Zepkin, 812 F.2d at 154-55. Moreover, the Fourth Circuit has repeatedly stressed that RICO is not a proper instrument for advancing garden-variety common law fraud claims, Andersson, 155 F.3rd at 506; Menasco, 886 F.2d at 685; Zepkin, 812 F.2d at 155.

First Guaranty offered nothing more than scant evidence of an incomplete fraud against it. The alleged use of mail and wires is an inconsequential incident of that alleged behavior that does not trigger RICO implications. Moreover, First Guaranty has alleged nothing more than a single, limited fraudulent scheme involving the Gleneagles property during the summer of 2000. While First Guaranty may claim that the Norwood Lane and Gleneagles transactions are similar to one another, the fact remains that the parties to each transaction are not entirely common. Moreover, First Guaranty has not even introduced RICO in the Norwood Lane case. More importantly, these transactions would constitute at most a mere two-act scheme even if viewed in the light most favorable to First Guaranty, let alone in the proper light of that

11

which is most favorable to the Procopios. Therefore, the incidents do not pose a threat of continued criminal activity. H.J., Inc., supra., 492 U.S. at 242, 109 S.Ct. at 2902.

### E. The Other Arguments Advanced By First Guaranty Do Not Provide A Basis For Summary Judgment Against The Procopios

First Guaranty erroneously claims that the Procopios are estopped from defending the allegations because they asserted their Fifth Amendment right to remain silent during their depositions in connection with the Gleneagles case. Not surprisingly, First Guaranty does not provide a single authority in support of this far-fetched proposition. The general rule is that where a witness asserts his Fifth Amendment rights at trial, he does not receive the standard jury instruction that the criminal defendant enjoys by right, namely that his silence is not to be used against him. Baxter v. Palmagiano, 425 U.S. 308, 319, 96 S.Ct. 1551, 1558 (1976). In other words, the jury, at best, may be allowed to hold the Procopios' silence against them at trial. In other words, a possible adverse presumption based on silence at trial does not equate to an entire defense preclusion at the summary judgment phase.

This presumption, however, will only affect First Guaranty's ability to prove the active elements of the alleged defrauding party, namely the intentional making of a material misrepresentation. The Procopios' silence will have no bearing on the question of First Guaranty's burden of demonstrating reasonable reliance. This element focuses solely on the perceptions and actions of the alleged victim and the defrauding parties' acts are of no moment. In other words, First Guaranty

12

still needs to prove its case affirmatively. Moreover, this burden of proving fraud, which is the essence of First Guaranty's claim against Mr. Procopio/the Procopios, is quite high, namely by clear and convincing evidence.[7]

Likewise, First Guaranty is wrong in claiming that it is entitled to summary judgment based on the Procopios' failure to answer the Gleneagles complaint. As set forth in the *Procopios' Motion for Leave to File an Untimely Answer to the Complaint*, filed under separate cover this same date, First Guaranty cannot demonstrate that it suffered actual prejudice based on the untimely filing as would be necessary to prevail in preventing such a filing. Moreover, this Court has already granted codefendant Robert Chasteen's motion for leave to file an Answer based on virtually identical facts and circumstances no less compelling than those at issue herein. Therefore, assuming the Court similarly grants the Procopios' motion, there will be no basis for that component of First Guaranty's argument.

### F. First Guaranty's Damages Calculus Is Fatally Flawed

First Guaranty uses the RICO treble damage multiplier beyond its lawful scope. First Guaranty claims damages arising out of the Gleneagles transaction in the amount of $100,000.00. This means that the most it can recover using the RICO multiplier is $300,000.00. The $52,050.00 that it allegedly spent to upgrade the Gleneagles property was an optional, non-itemized, expense that it incurred more than one year after the sale. Moreover, the

---

[7] Moreover, the Procopios can change their minds and testify at trial. In that case, First Guaranty can use their pretrial silence for impeachment only, but it cannot receive a favorable summary judgment ruling on that basis.

$200,000.00 that First Guaranty alleges to have lost in the sale of the Norwood Lane loan is not the subject of RICO and therefore cannot not subject to any multiplier.  Accordingly, the extent of First Guaranty's possible damages is $500,000.00.

### III. CONCLUSION

As set forth herein, First Guaranty is not entitled to summary judgment as to any of its causes of action against either Ronald Procopio or Margaret Procopio.  Therefore, this Court should deny First Guaranty's motion.


Respectfully Submitted,

/s/
Ian A. Williams #13631
717 D Street N.W.
Suite 400
Washington, D.C. 20004
(202) 842-2700

(Attorney for defendants
 Ron & Margaret Procopio)


Request For A Hearing

The Procopios respectfully request a hearing on the above matter.


/s/
Ian A. Williams

Certificate of Service

I hereby certify that a copy of the foregoing was served via first-class mail, postage prepaid on the 25th day of September, 2003 on the following individuals:

Gerald F. Chapman, Esquire

```
6917 Arlington Road
Suite 350
Bethesda, MD 20814

Robert M. Hillman, Esquire
416 Hungerford Drive
Suite 435
Rockville, MD 20850

Andre Barber, Esquire
1825 Eye Street, N.W.
Suite 400
Washington, D.C. 20006

Terrence C. McAndrews, Esquire
10632 Little Patuxent Parkway
Suite 446
Columbia, MD 21044
```

                                                                                         /s/
                                                                  Ian A. Williams